UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE BANKS,<br><br>        Plaintiff,<br><br>    v.<br><br>SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE, et al.,<br><br>        Defendants. | Case No. 24-cv-08681-SI<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Now pending before the Court is defendants' motion to dismiss the complaint. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing set for May 9, 2025. For the reasons set forth below, the Court GRANTS the motion to dismiss, with leave to amend in part.

**BACKGROUND**[1]

On or about July 17, 2021, Fernando Altuna Mendoza raped plaintiff Carrie Banks while she was unconscious in her home. Dkt. No. 3, Compl. ¶ 10. After a night out, plaintiff left a bar in an Uber, and Altuna Mendoza followed her home. *Id.* ¶ 11. According to the complaint, "He entered Plaintiff's home uninvited and without permission, found her unconscious in her bed, and had sex with her without Plaintiff's consent." *Id.*

In August 2021, Altuna Mendoza was arrested. *Id.* ¶ 12. In an interview with police, Altuna

---

[1] For purposes of this motion to dismiss, the Court treats as true the factual allegations as stated in plaintiff's complaint and draws all reasonable inferences in plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

1    Mendoza admitted that he had entered plaintiff's home on his own, that he found plaintiff passed
2    out in her bed, and that she was not sober enough to consent to sex. *Id.* ¶ 53. He also wrote "a note
3    of apology, which was booked into evidence[.]" *Id.* ¶ 55. Altuna Mendoza was charged in San
4    Mateo County Superior Court with multiple felonies, including two counts of rape and two counts
5    of sexual penetration by a foreign object. *Id.* ¶ 56.

6    During the following year, the San Mateo County District Attorney's Office ("SMCDA")
7    advised plaintiff to prepare to testify at trial. *Id.* ¶ 57. Trial was set to begin October 6, 2023. *Id.*
8    ¶¶ 58, 61-62. The assigned prosecutor, defendant Sharron Lee, was not prepared for trial. *Id.* ¶ 60.
9    Lee did not prep witnesses and was unresponsive to them, "demonstrated only superficial
10   knowledge as to the details of the case[,]" and never met with plaintiff to prepare her for trial or ask
11   her any questions. *Id.* ¶¶ 59-60.

12   In the week prior to trial, Lee told plaintiff that she intended to take the case to trial and there
13   was no plea deal. *Id.* ¶ 62. On September 29, 2023, Lee notified plaintiff that the parties would
14   likely begin jury selection for the trial on October 6 and that plaintiff did not need to come to court
15   that morning. *Id.* ¶ 61. On October 5, defendant Laura Adams, who worked for the victims' services
16   office at SMCDA, told plaintiff that witnesses were being scheduled for trial. *Id.* ¶ 63.

17   The complaint alleges that "[a]t the eleventh hour, Defendant Lee ambushed Plaintiff with a
18   sweetheart plea deal for her attacker[.]" *Id.* at 17. On October 6, 2023, unbeknownst to plaintiff,
19   Lee presented Altuna Mendoza with a plea deal "that would allow him to plead to false
20   imprisonment, which was not among the original charges and did not match the facts of the case."
21   *Id.* ¶ 64. According to the complaint, "Lee did not consult with plaintiff regarding the proposed
22   plea deal, in violation of Plaintiff's rights under California law as a victim of a crime . . . ." *Id.* ¶ 65.
23   When Adams told plaintiff about the plea deal, plaintiff immediately went to the courthouse to speak
24   to Lee. *Id.* ¶ 66.

25   "In an effort to justify the plea deal after the fact, Defendant Lee made various comments to
26   Plaintiff demonstrating bias against victims of sexual violence, especially female victims of such
27   crimes, including victim blaming, minimizing, invoking harmful and outdated sex stereotypes, and
28   shaming the victim for her behavior the night of her rape." *Id.* ¶ 67. Lee also indicated to plaintiff

"that the plea deal was not final, but this turned out not to be true. Defendant Lee told Plaintiff she was going to speak with the defendant and his counsel about the plea, but, upon information and belief, Defendant Lee in fact went to the courtroom to finalize the plea deal." *Id.* ¶ 69. Adams discouraged plaintiff from speaking in court and advised her that she would be removed from the courtroom if she did, which is false under California law governing victims' rights (i.e., Marsy's Law). *Id.* ¶ 70.

Judge Donald Ayoob accepted the plea deal. *Id.* ¶ 71. SMCDA had previously criticized Judge Ayoob's handling of sex crime cases. *Id.* ¶ 73. The complaint alleges that "Lee rushed the plea deal that day in part because Judge Ayoob, rather than the regularly scheduled judge, was presiding." *Id.* ¶ 72. According to the complaint, "The push to have Judge Ayoob preside over Plaintiff's case is therefore evidence that Defendant Lee was interested in completing the case rather than taking the necessary time to consult with Plaintiff as required under Marsy's Law." *Id.* ¶ 73.

The complaint also alleges misconduct by defendants Stephen Wagstaff and Shin-Mee Chang, the District Attorney and Assistant District Attorney, respectively. *Id.* ¶¶ 30-31, 74. On October 19, 2023, plaintiff informed them that she believed her rights under Marsy's Law had been violated. *Id.* ¶ 74. Rather than intervene to prevent the plea deal from going forward, as plaintiff hoped, "upon information and belief, Defendant Wagstaff worked to ensure that the sentencing would be conducted by Judge Ayoob, knowing that Judge Ayoob had previously conducted himself in a manner that raised concerns for Defendant Wagstaffe and SMCDA about whether the judge took sex crimes cases seriously." *Id.* ¶¶ 74-75.

On November 27, 2023, Altuna Mendoza was sentenced to probation, receiving no jail time beyond the five days he had already served. *Id.* ¶ 76. The assigned prosecutor did not consult with plaintiff regarding the proposed sentence. *Id.* It was not until the day of sentencing that plaintiff learned that the plea deal had been accepted and what the full details were. *Id.* Later that day, Judge Ayoob "told Plaintiff that he may not have accepted the plea deal had he known that Plaintiff was not consulted or that it had originally been a sex crime." *Id.* ¶ 77.

In March 2024, Altuna Mendoza was arrested for a probation violation for driving while intoxicated in Santa Clara County. *Id.* ¶ 78. No one from San Mateo County told plaintiff about

1    the new arrest; plaintiff only discovered it by happenstance. *Id.* ¶ 79.  Plaintiff attempted to contact
2    Adams but was unable to reach her. *Id.* ¶ 80.  Plaintiff then contacted Adams's supervisor, who did
3    not intervene. *Id.* ¶¶ 34, 81.

4    The complaint raises concerns about the handling of the case by Altuna Mendoza's probation
5    officer, defendant Alfonso Hernandez.  In violation of Marsy's Law, Hernandez did not consult with
6    plaintiff before issuing a sentencing recommendation on the probation violation, despite plaintiff
7    leaving voicemails and sending him emails. *Id.* ¶ 83.  Hernandez recommended one month in jail
8    for the probation violation without considering the underlying sexual offense. *Id.* ¶ 82.  Plaintiff
9    contacted Hernandez's supervisors, who did not intervene. *Id.* ¶¶ 37-38, 84.

10   On March 26, 2024, Altuna Mendoza was sentenced for the probation violation by a different
11   judge (not Judge Ayoob) and with a different prosecutor assigned to the case (not defendant Lee),
12   who requested substantial jail time. *Id.* ¶¶ 85-86.  The judge sentenced Altuna Mendoza to six
13   months in jail for the probation violation. *Id.* ¶ 85.

14   On December 3, 2024, plaintiff filed this suit in federal court.  Dkt. No. 3.  Plaintiff sues:
15   San Mateo County, the San Mateo County District Attorney's Office, the San Mateo County
16   Probation Department, and various individuals within the District Attorney's Office and Probation
17   Department.  Plaintiff brings four claims under 42 U.S.C. § 1983, for: violation of the Fourteenth
18   Amendment, Equal Protection; violation of the Fourteenth Amendment, Due Process; supervisory
19   liability under the Fourteenth Amendment; and *Monell* liability.  Plaintiff also brings five claims
20   under California state law.  Plaintiff seeks damages as well as declaratory and injunctive relief.
21   Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**LEGAL STANDARD**

24   Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if
25   it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to
26   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."
27   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires
28   the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

4

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher*, 828 F.2d at 561. However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

Defendants move to dismiss the federal claims, arguing that the individual defendants are immune from damages, that the complaint fails to allege municipal liability, and that plaintiff does not have standing to seek declaratory or injunctive relief.

**I.    Immunity for Individual Defendants**

Defendants first argue that the individually named defendants are immune from the claims raised in this suit, under the doctrines of absolute and qualified immunity. Plaintiff sues five individuals within SMCDA (Wagstaffe, Chang, Lee, Adams, and Kuhl) and four individuals within the Probation Department (Keene, Hernandez, Sisavath, and Dah). The Court finds the individual defendants are entitled to absolute immunity under the facts alleged here and thus does not reach

the question of qualified immunity.

### A. District Attorney's Office Defendants

A state prosecuting attorney enjoys absolute immunity from liability under 42 U.S.C. § 1983 for his conduct in pursuing a criminal prosecution insofar as he acts within his role as an advocate for the State and his actions are "intimately associated with the judicial phase of the criminal process[.]" *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). But prosecutors are entitled only to qualified immunity when they perform investigatory or administrative functions or are essentially functioning as police officers or detectives. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "[A]bsolute immunity is an extreme remedy, and it is justified only where 'any lesser degree of immunity could impair the judicial process itself.'" *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). The prosecutor "bears the burden of showing that . . . immunity is justified for the function in question." *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

Plaintiff's federal claims against District Attorneys Wagstaffe, Chang, and Lee are dismissed with prejudice because these defendants have absolute prosecutorial immunity for the actions alleged in the complaint, all of which pertain to the criminal prosecution of Altuna Mendoza in state court. *See id.* at 272-73. Lee has immunity for her actions related to the decision to present Altuna Mendoza with a plea deal for false imprisonment, for her presentation of a plea deal without first consulting with plaintiff, and for her decision to present the plea deal to Judge Ayoob on October 6, 2023. *See Briley v. State of Cal.*, 564 F.2d 849, 856 (9th Cir. 1977) ("prosecutorial immunity extends to the process of plea bargaining").

In opposition, plaintiff reads the advocacy/investigatory distinction too literally. She argues that some of the conduct complained of occurred "*prior* to advocacy, that is, before the prosecutor goes into court to advocate for a plea deal or a sentence." Dkt. No. 27, Opp'n at 4-5. Presumably she intends that the Marsy's Law violations were part of the "investigation" of the case, and so absolute immunity would not apply. Yet absolute immunity protects "those functions in which the prosecutor acts as an advocate for the State, even if they involve actions preliminary to the initiation

6

of a prosecution and actions apart from the courtroom." *Lacey*, 693 F.3d at 912 (quoting *Burns*, 500 U.S. at 486) (internal quotation marks omitted). The question is thus not whether the prosecutor's conduct occurred literally inside or outside of the courtroom doors. The Court has little difficulty under the facts alleged here in finding that Lee's actions surrounding the plea deal offered to Altuna Mendoza, including any inadequate notice to plaintiff, are protected by absolute prosecutorial immunity.[2]

Prosecutorial immunity also applies to the conversation Lee had with plaintiff on October 6, 2023. During that conversation, Lee "suggested that she show Plaintiff video of Plaintiff kissing the defendant inside the bar the night of the rape[;]" stated that the jury being shown the video may cause a juror to acquit; and "[t]old Plaintiff that 'No' does not always mean 'no,' in the eyes of the law." *See* Compl. ¶ 67. When the conclusory allegations are subtracted, this paragraph of the complaint, on which plaintiff heavily relies for her equal protection claim, shows that Lee was providing her legal assessment of the pros and cons of going to trial. Prosecutors are absolutely immune for "evaluating evidence and interviewing witnesses" in preparation for trial. *Buckley*, 509 U.S. at 273; *see also Caruso*, 646 F. App'x at 105 (finding prosecutor absolutely immune from Section 1983 suit brought by victim who alleged the prosecutor's office "did not meaningfully interview her concerning her version of the events and ignored her input when negotiating a plea deal"); *Arellano v. Becton*, No. 24-cv-2250-WHO, 2024 WL 3908114, at *4-5 (N.D. Cal. Aug. 20, 2024) (finding District Attorney defendants absolutely immune from Section 1983 suit brought by victim's father, who alleged DA failed to investigate case or talk to the family witnesses, finalized an illegal plea deal without consulting with victim's family, and got a specific judge to improperly preside over the case). In short, the Court finds Lee's actions covered by absolute prosecutorial

---

[2] The Court's ruling today is consistent with the provision of Marsy's Law that specifies: "This section does not create any cause of action for compensation or damages against the State, any political subdivision of the State, any officer, employee, or agent of the State or of any of its political subdivisions, or any officer or employee of the court." Cal. Const. art. I, § 28(c)(2). Plaintiff does not address this provision in her brief.

The Court's ruling is also consistent with the two circuit courts that have addressed whether prosecutors are absolutely immune from suit for violating the state's victims' rights law. *See Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993) ("we address this issue to make clear that prosecutors are entitled to absolute immunity for a failure to notify victims under a victim impact law"); *Caruso v. Zugibe*, 646 F. App'x 101, 105 (2d Cir. 2016).

7

immunity in this case.

District Attorney Wagstaff and Assistant District Attorney Chang are likewise immune. To the extent plaintiff argues they are liable for not having intervened to "prevent the plea deal from going forward[,]" as plaintiff had hoped, *see* Compl. ¶ 74, they are immune because such advocacy is "intimately associated with the judicial phase of the criminal process." *See Patterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2018) (quoting *Imbler*, 424 U.S. at 430). To the extent they are named for failing to intervene on Lee's Marsy's Law violations, they have immunity for the same reason that Lee is absolutely immune from the underlying Marsy's Law claims. *See Van De Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (supervising prosecutors absolutely immune from claims that they failed to train or supervise prosecutors on constitutional obligations at trial).

Prosecutorial immunity also extends in this case to defendants Adams and Kuhl, the SMCDA victim's advocate and her supervisor, respectively. Adams and Kuhl's involvement stems entirely from their assigned roles in the Altuna Mendoza prosecution. *See* Compl. ¶ 33 (defendant Adams "worked for the victims' services office at SMCDA and was assigned to support Plaintiff during the prosecution of Plaintiff's attacker"). "Immunity flows from 'the nature of the function performed, not the identity of the actor who performed it.'" *Patterson*, 883 F.3d at 830 (quoting *Kalina*, 522 U.S. at 127). Defendants argue that Adams and Kuhl's actions in this case were "all part of the SMCDA's advocacy in a particular criminal matter, and thus . . . [were] intimately associated with the judicial process." Dkt. No. 26, Mot. at 12-13. Plaintiff fails to address this point in her brief, and the Court agrees with defendants. *Cf. Tennison v. City & Cnty. of San Francisco*, 548 F.3d 1293, 1304 (9th Cir. 2008) (assuming without deciding that investigating officers may be entitled to absolute immunity from liability for *Brady* violations when their actions are intimately associated with the judicial phase of the criminal process).

### B. Probation Department Defendants

For the same reasons, plaintiffs' claims against Probation Officers Keene, Hernandez, Sisavath, and Dah are dismissed. "[I]mmunity depends on an official's function rather than his or her job title[.]" *Patterson*, 883 F.3d at 831 (citing *Kalina*, 522 U.S. at 127). Here, the allegations

1    against the probation officer defendants are sufficiently similar to the advocacy role of the SMCDA
2    defendants that absolute immunity should extend to them as well.  Plaintiff alleges that Hernandez
3    did not consider the underlying sexual offense when he recommended only one month in jail for
4    Altuna Mendoza's probation violation.  Compl. ¶ 82.  The complaint also alleges that Hernandez
5    did not consult plaintiff before issuing his sentencing recommendation and did not contact her until
6    the day after sentencing, despite plaintiff's multiple attempts to reach him.  *Id.* ¶¶ 83, 88.  The
7    complaint also alleges that Hernandez's supervisors did not intervene when plaintiff complained to
8    them about Hernandez's handling of the case.  *Id.* ¶ 84.  The probation officers' actions, as stated in
9    the complaint, are "acts of advocacy, which are entitled to absolute immunity," rather than
10   "administrative [or] 'police-type' investigative acts which are not."  *See Patterson*, 883 F.3d at 830.
11   Absolutely immunity thus applies to these defendants as well.
12       Because absolute immunity applies, the federal claims against the individual defendants are
13   dismissed with prejudice.
14

15   **II.     Municipal Defendants**
16       In addition to the individual defendants, plaintiff sues the County of San Mateo, the San
17   Mateo County District Attorney's Office, and the San Mateo County Probation Department.  She
18   sues all of these municipal defendants on her First through Fourth claims for relief (Equal Protection,
19   Due Process, Supervisory Liability, and *Monell* Liability).
20       As an initial matter, municipal departments within the County are improper defendants on a
21   Section 1983 claim.  *See Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996);
22   *see also Nelson v. Cnty. of Sacramento*, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013).  The Court
23   therefore DISMISSES with prejudice the federal claims stated against the San Mateo County
24   District Attorney's Office and the San Mateo County Probation Department.
25       The Court also DISMISSES with prejudice the First through Third Claims brought against
26   the County.  Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where
27   official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S.
28   658, 690 (1978); however, a city or county may not be held vicariously liable for the unconstitutional

acts of its employees under the theory of respondeat superior. *See Board of Cnty. Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). Because the County is named as a defendant on the First through Third Claims based on supervisory liability, dismissal of these claims against the County is warranted.

The Court now proceeds to address the Fourth Claim for *Monell* liability against the County. To establish an official policy that would give rise to *Monell* liability, a plaintiff must allege facts to support one of the following to survive dismissal of her claim: (1) an unconstitutional custom or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; or (3) a final policy-maker's involvement in, or ratification of, the conduct underlying the violation of rights. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing authorities), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

"[W]here a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). "That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests." *Daniels v. Williams*, 474 U.S. 327, 333 (1986). However, "negligence on the part of the municipal defendant [is] a much lower standard of fault than deliberate indifference." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007).

At the outset, the Court notes that the contours of plaintiff's *Monell* claim are not entirely clear. The complaint appears to assert that the County is liable based on a municipal custom or practice that caused her injury, based on a failure to adequately train staff, and based on the ratification of unconstitutional conduct by County policy-making officials, including Wagstaffe, Keene, and Chang. *See* Compl. ¶¶ 156-159. Plaintiff's opposition brief focuses on the ratification theory and requests leave to amend the complaint regarding the failure-to-train theory. *See* Opp'n at 20-23.

As to ratification, the complaint does not plead plausible allegations in support of this theory.

10

The complaint references ratification only in passing, in a conclusory allegation. *See* Compl. ¶ 159. Plaintiff's opposition brief focuses on additional facts, not included in the original complaint, that she would allege in support of ratification if given leave to amend. *See* Opp'n at 21.

Likewise with the failure-to-train theory, plaintiff includes additional facts in her opposition, appearing to concede that the complaint does not adequately state a claim. *See id.* As with ratification, she provides no explanation for why she did not include her full allegations the first time around. Nevertheless, the Court will give plaintiff one chance to amend. If it is true, for instance, that SMCDA or the San Mateo County Probation Department fail to train their staff on compliance with Marsy's Law, then it is possible that a *Monell* claim may exist.

However, the Court provides the following words of caution. First, plaintiff will need to allege sufficient, *non-conclusory* facts for her *Monell* claim to survive another motion to dismiss. Second, "[r]atification . . . generally requires more than acquiescence." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed in part sub nom. City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015). A "mere failure to discipline [a subordinate] does not amount to ratification of their allegedly unconstitutional actions." *Id.* (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253-54 (9th Cir. 2010)). Plaintiff's amendment will need to do more than plead "acquiescence" on the part of Wagstaffe, Chang, and Keene in order to proceed on a ratification theory. *See* Compl. ¶¶ 30-31, 35.

To the extent plaintiff bases her *Monell* claim on the existence of a longstanding practice or custom within the County, the Court notes that "[a] single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). Proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee is insufficient to establish the existence of a municipal policy or custom. *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 398 (9th Cir. 2014); *McDade v. West*, 223 F. 3d 1135, 1142 (9th Cir. 2000); *Trevino*, 99 F.3d at 918. The Court cautions that "[i]t is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim." *See Gonzalez v. County of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017). Amending the complaint to include

11

1 one more instance may not suffice to establish the County had a longstanding practice or custom. *See Bell v. Krol*, No. 13-cv-5820-SI, 2023 WL 8101982, at *5 (N.D. Cal. Nov. 21, 2023) (finding "two incidents—more than four years apart—are by themselves insufficient to establish a custom or policy").

Today's Order assumes, without deciding, that plaintiff has stated an underlying constitutional violation, without which no *Monell* claim will lie. If plaintiff successfully cures the above deficiencies in her *Monell* claim, the Court may revisit the question of whether she has stated a constitutional violation.

### III.  Injunctive and Declaratory Relief

The Court's above finding on absolute prosecutorial immunity protects individual defendants "only from damage claims, not from suits for prospective injunctive relief." *See Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 586 (9th Cir. 1997) (citation omitted). Defendants move to dismiss plaintiff's claims for injunctive and declaratory relief, arguing lack of standing.

A foundational principle of Article III of the United States Constitution is that "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013) (internal quotation marks omitted)). A plaintiff "must show standing with respect to each form of relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011); *see also Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996) (plaintiff who seeks only prospective injunctive relief has no standing to challenge statute on vagueness grounds because relief sought will not redress any past injury).

Standing for prospective injunctive relief requires either "continuing, present adverse effects" or "a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496-98 (1974), and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Where the plaintiff seeks injunctive relief, standing requires a "real and immediate threat" of future injury. *See Lyons*, 461 U.S. at 105. The existence of such a threat depends in part on whether the plaintiff alleges facts

which, if true, prove an unlawful pattern and practice of behavior on the part of the defendants, and not just a random, relatively isolated incident. *See Nelsen v. King Cnty.*, 895 F.2d 1248, 1254 (9th Cir. 1989). The speculative nature of the allegations also must be considered, including whether the claim of future injury relies upon a chain of speculative contingencies. *See, e.g., Lyons*, 461 U.S. at 105-09 (plaintiff who was stopped by police and subjected to a chokehold had no standing to pursue claim for injunctive relief where it was no more than speculation to assert that he would again break the law, be stopped, and be subjected to a chokehold without any provocation); *O'Shea*, 414 U.S. at 496-98 (finding no standing because plaintiffs could not establish that they would violate the law, be charged, held to answer, and tried in flawed proceedings).

Here, the Court agrees with defendants that the grounds for plaintiff to seek injunctive relief are too speculative to support standing. The complaint asserts: "Given the frequency of attacks on women in San Mateo County, the data regarding SMCDA's handling of sex crimes, and Plaintiff's own experience with County officials' mishandling of her case, Plaintiff reasonably fears that she is likely to be attacked again, and that her rights will be further violated by SMCDA and the Probation Department, and that her rights will continue to be violated in the ongoing case involving her attacker, who remains on probation until November 2025." Compl. ¶ 114. This is not sufficient to plausibly allege a "sufficient likelihood that [s]he will again be wronged in a similar way." *See Lyons*, 461 U.S. at 111; *Caruso*, 646 F. App'x at 104 (affirming dismissal of the victim plaintiff's claims for declaratory and injunctive relief because the court "would have to assume that Caruso would again be a victim of a crime, that the perpetrator of that crime would be prosecuted by the Rockland County District Attorney's Office, that the perpetrator would then negotiate a plea agreement, and that Caruso's input would not be considered in the court's acceptance of the plea agreement"). Because plaintiff does not have standing for her claims for declaratory and injunctive relief, the Court has no jurisdiction to hear those claims and the claims are dismissed from this case without leave to amend.

## CONCLUSION

The motion to dismiss is GRANTED. Plaintiff is given leave to amend only the Fourth

Claim (*Monell* claim) and only against defendant County of San Mateo. Any amended complaint is due no later than May 9, 2025. If plaintiff fails to file an amended complaint, the Court will decline supplemental jurisdiction over the remaining state law claims and will dismiss those claims without prejudice.

**IT IS SO ORDERED**.

Dated: April 18, 2025

SUSAN ILLSTON
United States District Judge