1
2
3
4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    CARRIE BANKS,                          Case No. 24-cv-08681-SI

8                    Plaintiff,
                                            **ORDER GRANTING MOTION TO**
9            v.                             **DISMISS FIRST AMENDED**
                                            **COMPLAINT**
10   SAN MATEO COUNTY DISTRICT
     ATTORNEY'S OFFICE, et al.,             Re: Dkt. No. 33
11
                     Defendants.
12

13

14        Now pending before the Court is defendants' motion to dismiss the First Amended

15   Complaint.  The Court held a hearing on June 27, 2025.

16

17                                     **BACKGROUND**

18        The factual background of this case is stated more fully in the Court's prior order at Dkt. No.

19   29 and the Court does not repeat those facts in full here.  For purposes of this motion to dismiss, the

20   Court treats as true the factual allegations as stated in plaintiff's complaint and draws all reasonable

21   inferences in plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

22   To summarize, on or about July 17, 2021, Fernando Altuna Mendoza raped plaintiff Carrie Banks

23   while she was unconscious in her home.  Dkt. No. 30 ("FAC") ¶ 10.  In August 2021 Altuna

24   Mendoza was arrested and charged with multiple serious felonies including two counts of rape.  *Id.*

25   ¶ 56.  In October 2023, the morning that trial was supposed to begin, the San Mateo County District

26   Attorney's Office ("SMCDA") offered Altuna Mendoza "a sweetheart plea deal . . . without ever

27   consulting Plaintiff . . . ."  *Id.* ¶ 13.  When Altuna Mendoza was later arrested for a probation

28   violation, no one from San Mateo County informed plaintiff about the new arrest nor did the

United States District Court
Northern District of California

probation officer consult with plaintiff before issuing his sentencing recommendation.  *Id.* ¶¶ 78-79, 83.  The First Amended Complaint alleges that "SMCDA and Probation Department officials excluded and marginalized Plaintiff at nearly every juncture of her case, and the assigned prosecutor demonstrated shocking callousness toward Plaintiff, bias against her, and unseriousness regarding her case."  *Id.* ¶ 3.  Plaintiff also alleges that when she advised District Attorney Wagstaffe about these failures, not only did he fail to intervene or otherwise support plaintiff but "instead compounded the violations of Plaintiff's rights as the victim of a serious crime, revictimizing her in the process."  *Id.* ¶ 4.

On December 3, 2024, plaintiff filed this suit in federal court.  Dkt. No. 3.  Plaintiff sued: San Mateo County, the San Mateo County District Attorney's Office, the San Mateo County Probation Department, and various individuals within the District Attorney's Office and Probation Department.  The complaint stated four claims under 42 U.S.C. § 1983 for: violation of the Fourteenth Amendment, Equal Protection; violation of the Fourteenth Amendment, Due Process; supervisory liability under the Fourteenth Amendment; and *Monell* liability.[1]  Plaintiff also brought five claims under California state law.

On April 18, 2025, the Court granted defendants' motion to dismiss.  Dkt. No. 29.  The Court found the individual defendants were entitled to absolute immunity from the Section 1983 claims.  The Court dismissed the Section 1983 claims against the County that were brought on the basis of supervisory liability.  The Court dismissed the federal claims against the District Attorney's Office and the Probation Department because these municipal departments were improper defendants on a Section 1983 claim.  The Court dismissed the Fourth Claim for *Monell* liability against the County, for failure to allege sufficient facts in support of this claim.  The Court also dismissed plaintiffs' claims for declaratory and injunctive relief.  The Court granted plaintiff leave "to amend only the Fourth Claim (*Monell* claim) and only against defendant County of San Mateo."  *Id.* at 13-14.

On May 9, 2025, plaintiff filed the First Amended Complaint.[2]  Dkt. No. 30.  Defendants

---

[1] *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

[2] The FAC continues to assert claims and name defendants who have been dismissed from this action with prejudice.  Plaintiff clarifies in her opposition that she does this "out of an abundance

now move to dismiss the *Monell* claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  They also ask that the Court decline supplemental jurisdiction over the state law claims.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher*, 828 F.2d at 561.  However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

---

of caution, not in order to relitigate them before this Court."  Dkt. No. 35 ("Opp'n") at 5 n.1.

United States District Court
Northern District of California

# DISCUSSION

## I.    *Monell* Claim

County defendants move to dismiss the *Monell* claim.  They argue that plaintiff fails to allege a constitutional violation and that the FAC does not plausibly attribute any alleged constitutional violation to County policy.  Dkt. No. 33 ("Mot.") at 2.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort.  *Monell*, 436 U.S. at 690.  To establish an official policy that would give rise to *Monell* liability, a plaintiff must allege facts to support one of the following to survive dismissal of her claim: (1) an unconstitutional custom or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; or (3) a final policy-maker's involvement in, or ratification of, the conduct underlying the violation of rights.  *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing authorities), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  Plaintiff's *Monell* claim is based on three theories, which she explains significantly overlap with each other: an unconstitutional policy or custom, a failure to train regarding victims' rights, and ratification.

### A.    Policy or Custom

The Court agrees with defendants that the FAC inadequately alleges the existence of a municipal policy or custom for *Monell* liability.  As the Court previously cautioned, Dkt. No. 29 at 11, "[i]t is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim."  *See Gonzalez v. Cnty. of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017).  Proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee is insufficient to establish the existence of a municipal policy or custom.  *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 398 (9th Cir. 2014); *McDade v. West*, 223 F. 3d 1135, 1142 (9th Cir. 2000); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, plaintiff points to no official policy in support of her claim.  Rather, she premises her claim on an established custom or practice within the County.  Under the case law, this is

4

permissible: a plaintiff may establish Section 1983 municipal liability by alleging "that a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.'"  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)) (internal quotation marks omitted).

The FAC alleges,

> On information and belief, the deprivation of Plaintiff's rights was part of a continuing, persistent, and widespread custom and practice by the County, SMCDA, and the Probation Department of failing to comply with Marsy's Law when the victim is female and/or a victim of gender-based violence, including with respect to Plaintiff.

FAC ¶ 164.

The problem here is that the FAC does not plausibly allege a custom or practice of failing to comply with Marsy's Law  -- the Victims' Bill of Rights Act of 2008, Cal. Const. art. I, § 28 -- when the victim is female or the crime is one of gender-based violence.  With respect to the case against plaintiff's attacker, Altuna Mendoza, the FAC alleges that defendants violated Marsy's Law by, among other things, discouraging plaintiff from speaking in court when the plea deal was entered (SMCDA), failing to notify her when Altuna Mendoza was arrested on a probation violation (Probation Department), and failing to consult with plaintiff before issuing a sentencing recommendation on the probation violation (Probation Department).

To establish a countywide custom or practice, the FAC highlights "[o]ther troubling cases [that] are similarly illustrative of the County's inadequate handling of gender-based violence cases[.]"  FAC ¶ 97.  However, the incidents highlighted in that paragraph—two from 2019, one from 2020, and two 2023 homicides—contain no allegations regarding compliance with Marsy's Law.  *See id.*  The FAC then alleges additional instances where victims of gender-based violence in San Mateo County had their Marsy's Law rights violated: an incident from 2010; an incident involving the same prosecutor from an unknown year, in which the prosecutor was suspended by the DA's Office in September 2012, "privately reproved" by the California Bar in 2013, and publicly disciplined in 2017; a case from 2019; a case from 2013; and a March 2025 plea deal for a homicide from 2021.  *Id.* ¶¶ 98-103.

To summarize, apart from the allegations involving the plaintiff herself, the FAC identifies five cases involving Marsy's Law violations for a victim of gender-based violence during a 15-year period from 2010 to 2025. Two of the cases involved the same prosecutor, who was subsequently disciplined by the San Mateo County District Attorney's Office for "dishonesty." *See id.* ¶ 98. Those allegations are therefore of questionable utility in evaluating the existence of a countywide custom or policy. To be sure, all the cases outlined in the FAC are tragic and at times gruesome. Nevertheless, the Court finds the alleged Marsy's Law violations are too few and far between to put plaintiff's assertion that there is a countywide practice over the line from "possible" to "plausible." *See Iqbal*, 556 U.S. at 678.

Here, the FAC fails to plausibly allege the existence of a longstanding custom or practice within the District Attorney's Office of disregarding Marsy's Law when the victim is female or when the crime is one of gender-based violence. Notably, the FAC is silent on compliance with Marsy's Law with respect to male victims. And as defendants note, the FAC is devoid of any instances outside of plaintiff's case in which the Probation Department is alleged to have violated Marsy's Law. "Only if a plaintiff shows that his injury resulted from a 'permanent and well settled' practice may liability attach for injury resulting from a local government custom." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (1989) (citations omitted); *see also Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (liability may not be predicated on isolated or sporadic incidents; "it must be founded on practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"). The Court finds the custom or policy allegations insufficiently stated.

### B.    Failure to Train

The FAC also alleges:

> On information and belief, the County has failed to issue policies and have failed to train, supervise, and discipline its employees within SMCDA and the Probation Department to ensure they comply with Marsy's Law in a manner that (a) protects the due process rights of female victims and victims of gender-based violence, and (b) does not treat similarly situated victims differently on the basis of sex and/or status as a victim of gender-based violence.

1    FAC ¶ 165.

2         In "limited circumstances," a municipal policy may be based upon the local government's

3    decision not to train certain employees about their legal duty to avoid violating citizens' rights.

4    *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  But the local government's liability under § 1983 is

5    at "its most tenuous" when the claim is based on a failure to train.  *Id.*  Moreover, "a municipality's

6    failure to train its employees in a relevant respect must amount to 'deliberate indifference to the

7    rights of persons with whom the [untrained employees] come into contact.'"  *Id.* (quoting *Canton v.*

8    *Harris*, 489 U.S. 378, 388 (1989)).  Deliberate indifference is a "stringent" standard, "requiring

9    proof that a municipal actor disregarded a known or obvious consequence of his action."  *Board of*

10   *Cnty. Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

11        A "pattern of similar constitutional violations" by untrained employees is ordinarily

12   necessary to establish that the failure to train or supervise is a deliberate policy.  *Connick*, 563 U.S.

13   at 62.  Indeed, constitutional violations must be "*so* predictable" that the failure to train amounts to

14   a "*conscious disregard*" for those constitutional rights.  *Id.* at 71.  Thus, evidence of the failure to

15   train a single employee is ordinarily insufficient to establish that the failure to train was a

16   municipality's deliberate policy.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 484-85 (9th Cir.

17   2007) (absent evidence of a "program-wide inadequacy in training," any shortfall in a single

18   officer's training was classified as negligence rather than deliberate indifference, therefore plaintiff

19   did not meet his burden to withstand summary judgment).

20        For the reasons stated above regarding custom or policy, the FAC also fails to show a pattern

21   of similar constitutional violations by untrained employees.  As noted, the FAC alleges no failures

22   by the Probation Department to comply with Marsy's Law, outside of the allegations related to

23   plaintiffs' own case.  The allegations regarding the District Attorneys' Office recount five cases

24   with Marsy's Law violations, over the course of 15 years, outside of what happened to plaintiff.

25   Two of those instances involved the same prosecutor, whom the District Attorney's Office

26   subsequently disciplined.

27        Moreover, the FAC fails to meet the "stringent" standard for deliberate indifference.  *See*

28   *Brown*, 520 U.S. at 410.  The FAC alleges that on October 19, 2023—after Altuna Mendoza had

1     entered a plea deal but before he was sentenced—plaintiff met with defendant Wagstaffe and

2     defendant Chang, the District Attorney and Assistant District Attorney, respectively.  FAC ¶¶ 30-

3     31, 74.  "Plaintiff communicated that she believed her Marsy's Law rights had been violated as a

4     result of Defendant Lee's and Defendant Adams' handling of her case, that the rape trauma crisis

5     center was unable to timely provide services to her, and that she hoped they would intervene and

6     prevent the plea deal from going forward.  No such intervention or other support occurred,

7     however."  *Id.* ¶ 74.  Plaintiff also alleges that defendant Wagstaffe refused to meet with her in May

8     2024, citing plaintiff's submission of a letter to the Department of Justice.[3]  *Id.* ¶ 90.  Defendant

9     Wagstaffe has also made public comments about the case since the filing of this federal lawsuit,

10    including statements that "We believe that the allegations of misconduct by my prosecutors are not

11    accurate" and that "If I were to go into detail with the problems in the [Altuna Mendoza] case, I

12    would be personally attacking her."  *Id.* ¶ 92.  The FAC further states that a news outlet reported

13    that "Wagstaffe declined to cite the purported issues with the case but said that, to his knowledge,

14    the DA's Office committed no misconduct and maintained that she [plaintiff] was informed of the

15    decision."  *Id.*  At the hearing, plaintiff's counsel was unable to clarify a question left open by the

16    FAC: whether plaintiff is alleging that the County does not train on Marsy's Law *at all* or what

17    precisely plaintiff is alleging the training lacked.   These allegations simply do not suffice to

18    constitute "deliberate indifference to a known risk."  *See Connick*, 563 U.S. at 67 (rejecting theory

19    that "prosecutors were not trained about particular *Brady* evidence or the specific scenario related

20    to the violation in [t]his case," explaining "[t]hat sort of nuance simply cannot support an inference

21    of deliberate indifference here"); *Bell v. Williams*, 108 F.4th 809, 825-26 (9th Cir. 2024) (narrow

22    gaps in training program did not demonstrate "deliberate indifference" on a failure-to-train theory

23    of *Monell* liability).

24

25         **C.     Ratification**

26         Plaintiff also pursues a ratification theory.  She alleges that ratification is evidenced by

27

28    _____
            [3] The specifics of the letter are not clear from the FAC.

1    Wagstaffe's comments to the media following filing of this lawsuit and by Wagstaffe and Chang

2    explicitly failing to follow up regarding plaintiff's concerns which she shared with them directly.

3    FAC ¶¶ 92, 166, 170.

4        "To show ratification, a plaintiff must show that the 'authorized policymakers approve a

5    subordinate's decision and the basis for it.'" *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d

6    1157, 1169 (C.D. Cal. 2018) (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)).

7    "Ratification, however, generally requires more than acquiescence." *Sheehan v. City & Cnty. of*

8    *San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed*

9    *in part sub nom. City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015).   "The

10    policymaker must make a 'conscious, affirmative choice to approve [the subordinate's] actions and

11    adopt them as official policy.'" *Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 985 (E.D. Cal. 2017)

12    (quoting *Clouthier*, 591 F.3d at 1253).

13        Here, the FAC fails to allege facts that would allow plaintiff's ratification theory to move

14    forward.   At most, what plaintiff has alleged is that Wagstaffe "concluded that the defendant

15    [prosecutor's ] actions were in keeping with the applicable policies and procedures." *See Lewis v.*

16    *Nanos*, 766 F. Supp. 3d 905, 938 (D. Ariz. 2024) (quoting *Garcia v. City of Imperial*, No. 08cv2357

17    BTM, 2010 WL 3911457, at *2 (S.D. Cal. 2010)).   This will not suffice to support a ratification

18    theory based on the District Attorney's actions. *See id.*   Moreover, the FAC contains no ratification

19    allegations as to defendant Keene of the County Probation Department.

20                                          ***

21        To summarize, the Court will dismiss the *Monell* claim for failure to sufficiently allege that

22    any constitutional violation occurred pursuant to County policy.   In light of this ruling, the Court

23    does not reach defendants' alternative argument that the FAC fails to allege the violation of a

24    constitutional tort.[4]   Likewise, the Court need not reach the question today of whether defendant

25

26        ───────────────

27        [4] Plaintiff did not respond to this argument in her opposition, although defendants fully briefed the matter and the Court previously cautioned that the question of a constitutional tort remained at issue. *See* Opp'n at 5 n.1; Dkt. No. 29 at 12 ("If plaintiff successfully cures the above deficiencies in her *Monell* claim, the Court may revisit the question of whether she has stated a constitutional violation.").

28

United States District Court
Northern District of California

Wagstaffe was acting as a State or County actor, *see Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013), as this issue is not determinative given the factual deficiencies in the FAC.  Because plaintiff has already had the opportunity to amend her *Monell* claim, and the Court previously cautioned that it would not be inclined to grant further opportunities to amend, *see* Dkt. No. 29 at 11, dismissal of the *Monell* claim at stage is with prejudice.

## II.     State Law Claims

Defendants also seek dismissal of plaintiffs' state law claims, for lack of supplemental jurisdiction.  Having found above that the only remaining federal claim in this case should be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c).  Plaintiff's state law claims are dismissed without prejudice to her re-filing them in state court.

## CONCLUSION

The rights that Ms. Banks seeks to vindicate are not to be taken lightly.  Still, the question before the Court today is whether she has stated a federal civil rights claim against the County.  For the reasons set forth above, the Court concludes she has not.  As the Ninth Circuit has observed, plaintiff's "remedy, if any, lies in the state courts or through the political process."  *See Dix*, 963 F.2d at 1301.

The Court GRANTS defendants' motion to dismiss.  The Fourth Claim for *Monell* liability is dismissed with prejudice.  Plaintiffs' remaining state law claims are dismissed without prejudice.

**IT IS SO ORDERED**.

Dated: July 1, 2025

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California